Clerk, would you call the case? The case is 2015, Home Healthcare of Illinois, Inc. v. Robert E. Jesk Would the attorneys who are going to argue the case please approach the bench and advise us of your name, who you represent, and how much time you'd like for your argument. Good morning, I'm Charles Coleman on behalf of the plaintiff, Home Healthcare of Illinois. How much time would you like? What is customary, Your Honor? How much time? Let's just keep going and I'll tell you after that. Amy Anderson on behalf of Robert E. Jesk and Robert E. Jesk and Associates, and I'd like 15 minutes, Your Honor. Okay, we'll give you 15 minutes also and then five for rebuttal. Yeah, that would be fine, Your Honor. Okay, now that microphone in front of you is not for amplification, it's for recording. So if you want to be heard, speak up, otherwise we'll lose you. Okay? Thank you, Your Honor. Thank you. Ms. Anderson? No, he's first. Oh, I'm sorry, Mr. Coleman. Thank you. Good morning, Your Honor. May it please the Court and Counsel, I'm Charles Coleman on behalf of the plaintiff, Home Healthcare of Illinois. We're here today with regard to the grant of summary judgment in favor of the defendant, that essentially is a two-count complaint, the third count was dismissed by agreement very early on in the case. The two counts being the principal one for which almost all the argument in the trial court was directed was a breach of contract count against Do you agree that the breach of fiduciary duty count goes the same way as the breach of contract? That whichever way the breach of contract goes, that's how the breach of fiduciary count goes? Or do you think there are separate arguments? There are separate arguments to a degree. I don't know how the Court will perceive whether breach of fiduciary duty is or is not a tort. It's an equitable remedy, and I said that because it's an equitable remedy, it's not a tort, though it seems to be kind of nebulous whether it is or isn't a tort, because the case we cited, Pedromos v. Everland Securities, says it's an equitable remedy very clearly, but earlier on it kind of uses some tort language, too, so I don't know. But if the exculpatory provision applies, it would preclude liability for the tort or breach of fiduciary duty as well, correct? I'm not sure of that, but I'm certain of the fact that the exculpatory provision does not preclude liability on the breach of contract count, but as to the tort count, I think there's a different burden of proof, and I believe all elements have been pled and met with regard to the breach of fiduciary duty, and I believe the burden of proof is more on the fiduciary than on the plaintiff. On a breach of fiduciary duty, it's for the fiduciary to show that he, by clear and convincing evidence, the transaction is equitable and just, which I don't think that the defendant can do, because he had duties spelled out very clearly in the escrow agreement, and he didn't perform them. So I don't think he could succeed, but I think the arguments are quite different, and the essential one, the one that I think is what everybody was thinking about when this was argued before Judge Byrne was the breach of contract, and Judge Byrne, I believe, fundamentally misperceived this as a tort when it was not, because she even referred to it as a business tort case when it wasn't. It was the count one is very clearly a breach of contract case, and what the defense is, what they seem to be relying upon during the life of the case was there was a dispute between who gave the money to Mrs. Champagne, the principal of the other party in the transaction. Mr. Just said that either Richen or one of the other gentlemen from the plaintiff did, and Mr. Richen clearly testified that the money is the ---- That's clearly a disputed fact. Yes. It is, and that it isn't a material fact, I think is the question. It doesn't matter. I think we have to assume for purposes of summary judgment that what your clients had happened happened. Yes, obviously. Absolutely. So they kind of moved on, and they're now arguing that there's this exculpatory clause, there's Paragraph 7 in the agreement that uses willful misconduct or gross negligence language, and Judge Bell referred to it willful and rotten and gross negligence, the way she preferred. What does it mean in this contract? What does it mean that you contracted with the escrow agent to do certain things, and if the escrow agent didn't do that, the only way he could be found liable is if he acted with willful negligence or gross negligence? Is that the way it reads? Well, it reads that way, but ---- So what does it mean if it reads that way? So my opinion, the provision of the escrow agreement should probably be deemed a nullity. In its entirety, because of two Supreme Court cases, the two Supreme Court cases ---- But that's an exculpatory issue, isn't it? I'm sorry, Your Honor. If it was an exculpatory issue, it could be relevant, but how is it relevant here? The problem is they're using tort language, and the document uses tort language and the judge uses tort language. The Supreme Court of Illinois doesn't seem to be very high on the idea of having any tort actions. I haven't seen any yet. What are the two Supreme Court cases you're relying on, Dahlberg and ---- Dahlberg and the Morrow case, both of which ---- And they say what? They essentially say that there is no such thing in this State as a willful wanton breach of contract, and for that matter, that Morrow case uses language cited from the introductory portion of the restatement, second of contracts. Willful breaches have not been distinguished from other breaches. They're feeling a breach is a breach is a breach, and that there is no such animal in Illinois, and I think now we have two Supreme Court cases. Are you talking about Morrow v. Goldschmidt? Yes. And that's not really what it says, though, counsel. What it says is we decline to adopt Plaintiff's alternative argument that punitive damages should be awarded for certain willful and wanton breaches of contract, even though the breach is not accompanied by an independent tort. So it recognizes that there are such things as willful and wanton breaches of contract. It just says we're not going to award punitive damages. No, I don't think they were simply trying to recognize that there were, and that was clearly what Balfour said. I think they were declining to recognize the existence of a willful breach of contract. It's declining to award punitive damages for it, but it doesn't say there's no such thing as a willful and wanton breach of contract. I don't read Balfour as saying that, and I don't read Goldschmidt as saying that. And if there's language that I'm missing, please point me out to it. I understand that we don't award punitive damages for willful and wanton breach of contract. We don't treat them any different than any other breach of contract, but I don't see the Supreme Court ever having said there's no such thing. Well, let me frame it all again, because I was under the clear impression from the language that says, well, first of all, the citation of that section of the restatement that willful breaches are not different from other breaches says to us that they're really, they are not, there's never, it's not been defined what is a willful breach of contract, because the courts have never recognized such an animal. Let me just grab a copy, I had it brought with me, because I distinctly know from what I wrote and what I read. I mean, Balfour is about something else entirely. It's an interpretation of a statute, correct? But it's using the statute as kind of an end-around, the fact that usually you cannot sue a hospital governing board for its positions, and they're saying that because, and the statute uses willful language, but Balfour was very unhappy with the concept and still did not allow it, and basically the same thing, that there is no concept that the court has recognized as such a thing as a willful breach of a contract. There just is no such animal. And the fact that you're using it either as a point of to... Is it against public policy for two parties to contract, that a breach of the agreement will not impose liability unless the breach by the escrow agent is willful? I mean, is that against public policy? I would think it is for the simple reason that, one, the Supreme Court has twice refused to recognize the concept of a willful breach of contract, and secondly, there's no definition of how a breach of contract becomes willful. And that's why the court in Murrow cited the second section of the statement, second of tort, willful breaches have not been distinguished from other breaches. Now, it does go on to quote punitive damages not awarded for breach of contracts, but that's what was before the court at the time, someone seeking punitive damages for a breach, because they were acting as plaintiff attempting to claim punitive damages for an alleged willful breach. I think the same thing applies when you're trying to claim willful breach as a defense. What's a willful breach? The courts have not gone there because they don't recognize such an animal as a willful breach of contract. The phrase willful breaches have not been distinguished from other breaches applies regardless of whether the party relying upon whether the breach is willful is the plaintiff or the defendant. Willful breaches are not distinguished from other breaches. Who drafted the escrow agreement? I am not clear on that, and I am not clear on that at all. I don't want you to spend your time looking for the answer. Because I don't have it. I'm not clear. I'm sorry. But let me just move on. Even if there were such an animal as a willful breach of contract, we are not in a position to say that summary judgment was ever appropriate. This act was by Mr. Just willful because he knew that Paragraph 3 required him to have a written authorization that all of the terms of the agreement had been met before he gave the money to Mrs. Sampang. And he gave the money to Mrs. Sampang without, and he acknowledged he didn't get the letter from Home Health Care, and he gave the money anyway. That's an intentional act. He denies giving the money to Mrs. Sampang. He denies. He did it, but for purposes of summary judgment, we say that he gave the money to Mr. Just, or actually his precise testimonies, he witnessed his shareholder, Mr. Yusuf, give the check to Mr. Just, and the next thing he knew, the money was in Mrs. Sampang's possession, although he didn't exactly see it. So you're defining willful as the same as intentional, as something as intentional as willful. Yeah, that is absolutely correct, and I believe that I'm backed up by, as basic a source as what I said at the Black Slaw Dictionary, intentional as willful is intentional. They're also trying to say that our expert, Mr. Gutstein, didn't label it willful, but he didn't have to. He testified to two things. One, that Mr. Just was in breach of the contract by virtue of giving the money to Mrs. Sampang, and secondly, he testified that he was familiar with the policy. And he testified to two things.  And he testified to the fact that he was familiar with the policy. So is expert testimony really not the appropriate subject for expert testimony, legal opinions? Isn't that – don't we have a lot of authority for the fact that that's not appropriate? I don't know what to say. Everybody has argued it. Both parties have an expert, and they're pointing to our experts, and you didn't call it willful. I did not see much discussion of that in the briefing. I have to say that I was glad, since I don't think that's an appropriate subject for expert testimony. Well, but if I may, on a breach of fiduciary duty by an attorney, you would need expert testimony, because that would be outside the canon of an average juror, it would seem to me. No? That's possible, but the main thing is he said he breached the contract, and that's the – Well, but you have a breach of fiduciary count. Yes, we do. But I think all the elements are there. By an attorney. Yeah. And typically you would need expert testimony, it would seem to me. The elements – An average juror would not know what a reasonable attorney would do under the circumstances presented here. I think – there's only three elements of breach of fiduciary duty, and I think they're all said, and I think that if I'm – the evidence is – That's why you would need these lawyers saying what he did was a breach. I believe that what Justice Mitchell said is – I don't mean to hang you up. May apply equally to both, because one, the elements are there. If we prove the elements and a jury is instructed by a judge, I don't know that there's any stronger need for an expert on breach of fiduciary duty than there is on a breach of contract. But you don't have experts on a breach of contract. Either the contract was complied with or it was not. That is a determination by the fact finder. If the contract is before the jury or judge, the determination is made, did the parties breach the contract? You don't have an expert saying, yes, he breached. That's invading the province of the jury on that question. If it's a negligence, breach of fiduciary duty on the part of a professional, typically you need a professional's opinion as to the breach so that they can assist the fact finder, typically a jury but not in a fiduciary duty situation, of whether that conduct is beyond the course of a reasonable attorney, physician, or whoever who breached fiduciary duty. But I digress. Go ahead. Okay, yeah, because as I said, I don't see that the professional testimony may shed much more light on this than that. And I must admit, there was more by both experts zeroing in on the breach of contract and the kind of breach of fiduciary duty was left as a separate feature with regard to this. But essentially what we've, I think we've covered most of the points, which is either one, that there is no such animal as a breach of, as a willful breach of contract, or if there is such an animal that the evidence is still in dispute because of the willful nature of the choice Mr. Just made and the fact that Mr. Gutstein labeled him as having a breach of contract with knowledge of the entirety of the escrow agreement, which includes the infamous Paragraph 7 that we're arguing about. So if he knew Paragraph 7 existed, still said he breached the contract, then he, by implication, by obvious, clear implication, perceives that the breach was willful. And finally, I think that pretty much covers the essence that we have here. I have one last question for you. If it was, if the exculpatory clause was an affirmative defense and the, and Mr. Just put forward evidence that he said put him within the exculpatory clause, wouldn't the burden then shift to you to come up with some contrary evidence? Even though he was the movement, once he puts forward evidence on an affirmative defense, does that not shift the burden to you to show that that affirmative defense, that were statute of limitations or statute of frauds, does it not shift the burden to you to then come up with some evidence to the contrary? If he did, but the essence of their motion for summary judgment basically was that you didn't come up with the evidence that you were willful, that we were willful. I understand. And that is certainly Judge Brennan's rationale. But there was testimony, and I believe it was before Judge Brennan, as to all the reasons he thought that he was acting appropriately and not acting with gross negligence and he was acting based on his interpretation of his obligations. All that evidence was before Judge Brennan. Well, the, you know, there was no real argument pointing to specific provisions of the original, of the mail agreement, the articles of agreement, which he was pointing to, which would have exculpated him. But didn't he say it was supposed to be deposited in my old account? It wasn't deposited in my old account. All of that went to his understanding of what he was supposed to actually do at the closing. And the closing couldn't have happened if the check hadn't been transferred. All of that went to his, what he thought was his affirmative defense, or what he thought showed that he wasn't acting willfully. But I don't think any of those things rise to the level of exculpating him. He still had this obligation under Paragraph 3. He didn't do it. He didn't explain why he, why, that any of this gets around it. He has more excuses than exculpatory facts. And I don't think that they do to the contrary. But if he did it intentionally, he did it willfully. If he did it on purpose, he did it willfully. Essentially, yes. And to the extent that there's any dispute on it, that leaves it a disputed issue of evidentiary fact for which we should go back and try a case. Certainly whether or not he gave her the check is a disputed issue of fact. Certainly that is. Yes. I think that's quite clear. Have you reviewed the Jewelers Mutual case? I'm sorry? Have you reviewed the Jewelers Mutual case? I don't think I've read the case. It holds that an exculpatory clause in a contract is unenforceable if it makes a party's contractual obligations illusory. Contractual obligations? Illusory. Illusory. Well, the contractual obligations, the only contractual, only part of this contract that's illusory is Paragraph 7. All the other, the contractual obligation of Paragraph 3 is anything but illusory. So I don't know that there's anything illusory about his obligation to not turn over the check unless he got the letter that he didn't get. Is it a coin with two sides? Is it a coin that has something on each side of it? In other words, you could choose which one you want? You could flip a coin to see how this turns out? Well, at this point in time, as to I believe that it's very clear that he didn't comply with the very clear duties under Paragraph 3 of the escrow agreement. And as I said, the only thing I perceive as illusory is the Paragraph 7 that the defense relies upon because it creates a defense that is undefinable under our law. And your requested relief is what? Well, that the summary judgment be reversed and remanded back to the trial court for trial. Thank you. Thank you. Ms. Anderson. Thank you, Your Honors. May it please the Court, Amy Anderson on behalf of the athlete and Robin P. Jeskin Associates. Just to address some of the issues that just came up. First of all, to answer Your Honor's question, the escrow agreement that we're discussing today was drafted by the representative of the plaintiff, Mr. Rivkin, and his attorney. Mr. Jesk had drafted the Articles of Agreement for Deed. And that's something that we've been, and plaintiff has been, the plaintiff has been ignoring quite a bit, is what is an Articles of Agreement for Deed. And that's important to our arguments and what the court relied on as well. An Articles of Agreement for Deed is a contract purchase where the seller basically acts as the financer. And what's important about that is part of that agreement and what everybody signed on this initial closing date in August of 2010 was that the buyer, who is the plaintiff in this case, is paying the seller $100,000 at this initial closing to get access to the business, to then start running the business so that they can then make the additional payments down the road towards the purchase of this business. And in looking at the contract itself, Paragraph 3 says, and this again is the contract for the Articles for Deed, says the buyer has paid $100,000 to the seller. And that's one of the documents, one of the many documents that was signed at the initial closing. And that contemplates a final closing, correct? Down the road. And in the Articles of Agreement, there's a writer. I wish I could go back and rework all of these documents. But Writer A talks about, as opposed to Exhibit 2, the escrow agreement, but Writer A talks about how that $100,000 was to be distributed. And Writer A, again, separately signed by the parties to this contract, defines what the escrow agent is to hold as far as documents. And those are the warranty deeds and the different stock certificates, et cetera. And Mr. Jess still has those to this day as part of those agreements. So it didn't deal with the $100,000? It did not. The $100,000 was contemplated to be a down payment so the seller has some incentive to hand over the business. But that's not in the Articles of Agreement. It is. Oh, it is? It is. Yeah, that's what I just read to you, Your Honor. In Paragraph 3, the Articles of Agreement in Paragraph 3 says the buyer has paid, past tense, $100,000, and then they all sign this agreement that they're in agreement that they're going forward under this contract. But then the escrow agreement provides that the $100,000 wouldn't be dispersed until these two other conditions were met. Well, the escrow agreement has some handwritten additions and changes to it. And those handwritten changes were made by the representative or the plaintiff from health care. And what it did change, not just the amount that was to be paid of that day, but it says in handwriting, the deposits and documents upon delivery to the escrow agent will be directly issued, and this is in handwriting, directly issued upon closing to the seller. And all of the instructions about the deposit and IULTA and all of that were stricken out of that paragraph. But it says after approval of all documentation by buyer and buyer's lender. That is when the distribution is supposed to occur. And this is where I'm coming to the point of I believe Mr. Jessup was still acting in good faith because he is under an obligation to follow, according to this escrow agreement, to follow the Articles of Agreement for Deed, which call for a payment of $100,000 to be paid to the seller. And by signing all of these documents, he had to do this. Did he ignore the escrow terms? He's not ignoring the escrow terms because, as I said, he still has all of those documents in his possession. Except for the $100,000 under the escrow agreement. Correct, Your Honor, because that $100,000 was a down payment that was transferred to the seller. It was made payable in her name. It wasn't made payable, Mr. Jessup's IULTA. I understand that, but you could read that escrow agreement to say only if these two other conditions were met. Correct? Doesn't that what it says? It does say that, yes, Your Honor. So he may have believed he was acting appropriately under the Articles of Agreement, but that is contrary to what the escrow agreement provided. Correct? That may be true. He was a party, Mr. Jessup was a party to the escrow agreement. He was not a party to the Articles of Agreement for Purchase. Right. Those were incorporated, however, into the escrow agreement. They're all tied together, yes. So is your argument that there is some ambiguity in what the escrow agreement required him to do, and assuming for purposes of summary judgment that he did what home health care says he did, which is distribute the check, that he acted based on his understanding, his reasonable understanding of what the escrow agreement required him to do, is that your? I do believe that there is a dispute between the escrow agreement and the Articles of Agreement for D with respect to that $100,000. And I think it probably could be arguably read both ways. But the case law is very clear that the court is to look at all of the documents and making the determination on that, but that takes us to that exculpatory paragraph. But that's if there is an ambiguity. There is an ambiguity, Your Honor. But there was no hearing to allow the plaintiff to present parole evidence to clarify what that ambiguity really meant, what was the intention of the parties. So, I mean, that's where I really get into a difficult twist. Because it seemed like the parties were focusing on the willful and gross negligence aspect of it without focusing on the factual question of did he or did he not convey the check. So, for purposes of summary judgment, we have to assume that he did convey the check. Now, if your argument is that it's ambiguous, there should have been a hearing on the ambiguity. Not necessarily because of that exculpatory paragraph, Your Honor. What's your position on the exculpatory paragraph? Counsel claims that the Illinois Supreme Court just does not recognize that provision in a contract. I disagree that Valsler and Morrow have any application to this case. And first, let me, because we've been focusing on only one of the sentences in that paragraph for the exculpatory contract. And if I could just remind Your Honors, the paragraph in its entirety says, the escrow agent shall incur no liability whatsoever except for willful misconduct and gross negligence. The next sentence goes on to say, the seller and the purchaser each release the escrow agent from any act done or omitted to be done by the escrow agent in good faith in performance of his duties. And that language, Your Honor, is carried forth in Myers. It's almost exactly the same thing. The Myers exculpatory clause says, no personal liability for the escrow agent when acting in good faith. But in Myers, they ultimately decided that the escrow agent didn't violate the contract. Correct. Correct. And you're not asking us to interpret the contract necessarily the way your client did. You're just saying there's an ambiguity. It could be interpreted that way. If it's interpreted that way. If it could be interpreted that way, he acted in good faith. That's what you're saying. That's what I'm saying. In order for Plaintiff in this case, and where the judge came down in our favor in the moisture for summary judgment, is Plaintiff has to plead that in order to show that my client breached this contract, that he acted not in good faith. Not if it's an affirmative defense. And I think Myers talks about it as an affirmative defense. So if it's an affirmative defense, he had no obligation to plead it. You have the option. You have. I mean, that's what Myers talks about it as. And I think it's very hard to think of it as anything other than an affirmative defense. You're saying, assume we breached the contract. Assume the contract says exactly what the plaintiff says, and assume we did exactly what the plaintiff says we did. That's, but we acted in good faith. Sounds like an affirmative defense to me. The case file that I've cited in my brief, Your Honor, though elements of what the plaintiff is required to prove in their case are not an affirmative defense. I did not see a single case you cited that suggests an exculpatory clause as anything other than affirmative defense. If there is, then tell me, and I will take another look. The only case really that's on point is Myers, and that talks about it as an affirmative defense. Interestingly, though, the VALFA case that the plaintiff cites to you about that immunity language, that was not pled as an affirmative defense. That was a motion for summary judgment that was brought by the hospital citing to the statute as an immunity. There's no mention of that being an affirmative defense in that case. I don't think that helps you at all. Let me say this to you. Even if it is an affirmative defense, I think that it doesn't really matter, because if you put forward production, if you put forward evidence of it, that shifts the burden to them. So I think this whole thing about whether it is or isn't an affirmative defense is kind of irrelevant. Well, but if he pled a breach of contract, you had the obligation to take the check, you took the check, and you couldn't give the check to the seller unless these conditions were met. They weren't met. It's a breach of contract. If the position is that he can't be liable even for a good faith mistake, right? Correct. If he breaches, if he doesn't do what he's supposed to do under the contract in good faith, he still can't be liable under paragraph 3? 7. 7. Okay. That still, in my mind, creates a question of fact. Is it good faith to do what the plaintiff said he did? Now, why wouldn't the fact finder make that determination? To get it before the fact finder, Your Honor, I think the plaintiff initially has to plead that he wasn't in good faith, and that was never read here, and that was the basis for the measure for summary judgment. Let's assume it's an affirmative defense. Then can you answer Justice Pierce's question? If it's an affirmative defense, and so he doesn't have any obligation to plead, and he does plead very clearly a breach of the contract, why doesn't it go to a fact finder? There is still no evidence before the court that he did, he acted in any manner other than in good faith. And what would that evidence have to look like? That evidence is the testimony of Mr. Jessup that was in front of the court, indicating that it was his belief that this was a down payment pursuant to the articles of agreement, that all of the documents were signed. But how can the defendant take it both ways? Either he got the check and gave it because he thought he could give it to the seller, but I thought his defense is, I never got the check. The plaintiff gave the check directly to the seller. I thought that's a defense. That was not necessarily, I mean, for the purposes of motion for summary judgment, that was not, again, taking the facts in the right most favorable to the plaintiff. I think that even if we agree with the plaintiff that that check was handed to Mr. Dusk, it still is a check made payable to Flora Sampang. But he's the escrow agent. Correct. And if the paragraph that provides, in any event, willful, gross, whatever, he still is not liable if he acted in good faith. Isn't acting in good faith a question of fact for a fact finder? I don't believe so in this case, Your Honor, again, because I don't. In this complaint that's in front of the court, and at the time that we were arguing this motion for summary judgment, all of the evidence was closed. All of it was closed. But what's his position? He never got the check? I thought the alternative position was, and if you think I got the check and gave it to the seller, I didn't do it in bad faith. If Mr. Dusk did testify in his deposition that he never got the check that was handed directly to Ms. Sampang, yes. So that creates a question of fact of did he get the check or not? If he didn't get the check and the fact finder believes he didn't get the check, he could not have breached the contract of escrow because an escrow was never established. He never received the corpus of the agreement. And escrow was established for the documents. Okay. But we're not arguing about the documents. We're arguing about the $100,000. And it goes back to our point on the summary judgment stage, and that was regardless of how you look at how that check was distributed. You're saying assume, Judge, that my client did get the check. They haven't established for summary judgment purposes that the transfer of the check to the seller was in bad faith. Correct. Okay. Isn't that, whether it was good faith or bad faith, isn't that a material question of fact? I don't believe so. Why not? How can that not be a material question of fact? That's the entire exculpatory. Cause is good faith or not, right? That's got to be a material issue. But it goes back to the construction of the contracts itself, and the case law is clear that the courts decide in looking at the contracts what the intents of the parties are, and that the courts decide ambiguities or make determinations. But nobody has construed this contract one way or another, not Judge Brennan, not us. Nobody's asked us to. You haven't said our interpretation is correct, and the plaintiff hasn't argued their interpretation is correct. Nobody's asking us to make a construction of the contract. You're just saying your construction was reasonable. That's all you've really argued, I think, unless I missed something. You haven't said it's the only possible or this is the correct. And if we have to interpret the contract, isn't Justice Pierce right, then we have to look at parallel evidence because there's an ambiguity. I don't believe so here, Daniela. I'm going to go back to that expectatory agreement. I think that it's clear that in order to get this case in front of a jury or in front of a bench trial, that the plaintiff still needed to plead that Mr. Jesk had done something in bad faith, either the willful misconduct or gross negligence. And that step wasn't even taken by the plaintiff in this case. Okay, but you would agree, would you or not, tell me, that whether someone acts in good faith or not is a fact question? Respectfully, Your Honor, with the evidence that was presented in this case in front of Judge Brennan, I don't believe that it rose to the level of a fact question. None of us meant to distract you from whatever other points you wanted to raise. No, I think you covered all the points that I wanted to make and covered all the points that I wanted to address. Other than the one issue raised at the very beginning of the arguments this morning, I do think that the fiduciary duty breach and the breach of contract go hand in hand  And I think that the fact that the plaintiff did not do anything wrong is based upon the language of the contract. So with that said, I would ask the Court to affirm the motion for summary judgment as held by Judge Brennan. Thank you. Thank you. Mr. Cohn, briefly. A few things. But at the very least, it's a question of fact. Because we've alleged that Mr. Jesk, in giving the check to Mrs. Sampang, violated Paragraph 3 in that he, as he acknowledged, didn't get the letter from home health care that said everything was in order and it's okay to give the check. That's, as we said, was willful. It was willful. I can't imagine something being a willful breach. Well, he admitted not getting the letter, right? Yes. But he did not admit getting the check. Well, yeah, Mr. Richman testified, yes, he did get the check. No, no, I'm talking about the defendant. I never got the check. I never had the check. Well, yeah. The plaintiff took the check directly to the seller. Isn't that his position? That's his position, but it's also in, but for summary judgment purposes, I feel excited that he did get the check. I got it. Okay. I got it. But everything else about willful, gross, good faith, whatever, assumes in the alternative, if you believe I got the check, what I did was in good faith, not willful, and not grossly negligent. Isn't that it? But that's his position that he doesn't have an explanation for why, when he admits he didn't get the letter, the money still got to Mr. Sampag. And that's where we've got, I mean, willfulness, I feel, is very clear if the facts fall on our side. If you, for purposes of summary judgment, accept the plaintiff's position. Obviously. Right. And his argument is, if you accept the plaintiff's position that I did get the check, he hasn't demonstrated by the evidence that my conduct, as he claims I acted, was in bad faith, willful, or grossly negligent. That's what he's, that's the argument, right? Well, the obvious response to that is you gave the check to Mr. Sampag, you knew about paragraph three, how could it not be intentional? And if it's intentional, the definition of willful includes intentional. So I think at that point it falls on the side of willful. And as far as good faith, first of all, good faith is a very nebulous concept. I didn't mean to do anything bad. It doesn't, I don't think that cuts it enough to be good faith. To the extent that you would think that that should be a fact question? Yes, definitely. Okay. Okay. I don't think I have anything further. I don't have a point. On one point I think you may have already made. Mr. Jusk was not a party to the underlying articles of agreement. He only signed it as a witness. We agree. Okay. It was incorporated into the escrow agreement. Yeah, but his duties were spelled out in the escrow agreement more than anything. That's what he had to do. More than anything or in addition to the articles of agreement? What does it mean to make it a part of the escrow agreement? What does that mean? Well, that's what the parties were following. But I think his, there's nothing, nothing, even if that is incorporated as elements, there's nothing in the underlying agreement that trumps Paragraph 3 about the duty to not do anything until you get the letter. Okay. Anything further? Thank you. All right. Thank you very much. We appreciate your efforts on behalf of your clients. We will take the matter under advisement before it stands at recess. Thank you.